UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SERINA MOORE,

              Plaintiff,

-against-

AYMAN A. SHAHINE, M.D.,

              Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/4/2021___

18 Civ. 463 (AT) (KNF)

**ORDER**

ANALISA TORRES, District Judge:

Plaintiff *pro se*, Serina Moore, brings this medical malpractice action against Defendant, Ayman Shahine, M.D. ECF No. 20. Defendant moves for summary judgment. ECF No. 86. For the reasons stated below, Defendant's motion is GRANTED.

## BACKGROUND

During all relevant time periods, Defendant provided plastic surgery services at his Manhattan office, the NY Laser Cosmetic Center. Moore Med. Records at 2, ECF No. 87-9. Plaintiff, a resident of Boston, first learned of Defendant via a social media post of a celebrity praising Defendant's work. 56.1 Stmt. ¶¶ 1–2, ECF No. 88; Pl. Opp'n ¶ 11, ECF No. 79.[1] On January 13, 2015, Plaintiff visited Defendant's office for an initial consultation. 56.1 Stmt. ¶¶ 3–4; Pl. Opp'n ¶¶ 12–13. Plaintiff filled out a client questionnaire, indicating that she was concerned with her "[t]ummy an[d] ass," and was interested in a fat transfer. Moore Med. Records at 4. Defendant informed Plaintiff of certain risks of the procedure, including bleeding, swelling, and small scars. 56.1 Stmt. ¶ 9; Pl. Opp'n ¶ 18; Pl. Dep. at 72:11–23, ECF No. 87-10.

---

[1] Defendant filed his original motion for summary judgment on March 5, 2020, ECF No. 75, which the Clerk of Court rejected for certain technical deficiencies, 3/26/2020 Docket Entry. Plaintiff had already filed her opposition to the motion by the time the Clerk rejected the motion. ECF No. 79. Defendant then correctly refiled his motion concurrently with his reply brief on April 6, 2020. ECF Nos. 86–91. Therefore, the Court takes as the operative briefing: Defendant's April 6, 2020 motion for summary judgment and accompanying papers, ECF Nos. 85–90; Plaintiff's opposition, ECF No. 79, and Defendant's reply, ECF No. 91.

Defendant also explained to Plaintiff that she would be numbed but awake during the procedure. 56.1 Stmt. ¶ 10; Pl. Opp'n ¶ 18; Pl. Dep. at 72:6–10. Plaintiff told Defendant that remaining awake was particularly important to her. Pl. Opp'n ¶¶ 15, 18. Plaintiff paid Defendant a $5,000 deposit. Moore Med. Records at 27.

On June 7, 2015, Plaintiff returned to Defendant's office for the procedure.[2] 56.1 Stmt. ¶ 13. Defendant performed a physical examination of Plaintiff and concluded that she was healthy. Moore Med. Records at 7. On the preoperative records, Defendant wrote that Plaintiff would undergo a "lipo of fat to butt" procedure. *Id.* Defendant's notes also indicate that the "risks, benefits [were] consulted." *Id.*; Def. Dep. at 63:23–24, ECF No. 87-11. Plaintiff signed documents indicating her consent to the procedure and acknowledging its risks, including bleeding, skin irregularities, dents, scars, and soreness. Moore Med. Records at 8–23. The documents also state that Plaintiff understood that photographs or videos of her may be taken and used for "education, entertaining, science, teaching, marketing, scientific journals, and any other viewing purpose in any media outlet form." *Id.* at 16.

According to Defendant's operative report, dated June 7, 2017, Plaintiff signed the consent forms, and was then walked into the procedure room. Moore Med. Records at 24. Defendant marked Plaintiff's skin to indicate the areas to be treated. *Id.*; Pl. Opp'n ¶ 31; Pl. Dep. at 88:15–21. Plaintiff states, and Defendant concedes it is possible, that he took pictures of Plaintiff at that time. Pl. Opp'n ¶ 31; Def. Dep. at 20:5–9. Defendant infused "a standard Klein tumescent fluid solution" (a local anesthetic) into Plaintiff's back, abdomen, and back of her arms, and waited thirty minutes for the solution to activate. Moore Med. Records at 24. Defendant then made 2.5 mm incisions into the selected areas, removed 400 cubic centimeters of

---

[2] Plaintiff states that she initially scheduled her procedure for the end of May, but that it was rescheduled the week of the appointment. Pl. Opp'n ¶¶ 20–21; Pl. Dep. at 80:24–81:22.

fat from those areas, and reinjected it into "each cheek." *Id.* at 24; 56.1 Stmt. ¶¶ 35–36. Plaintiff claims that, contrary to Defendant's records, Defendant also treated scars on her face and breast, as had been discussed, and inserted fat into her breast, which she had not authorized. Pl. Dep. at 59:24–60:8, 105:7–9, 113:10–18; ECF No. 37 at 52.

Defendant's operative report states that Plaintiff was "fully comfortable, awake, and alert, and oriented" throughout the procedure. Moore Med. Records at 24. Plaintiff says that when Defendant began the procedure, the numbing agent had not set in, and that she asked Defendant to take a break. Pl. Opp'n ¶ 33; Pl. Dep. at 109:15–18. He then gave her more anesthesia. Pl. Opp'n ¶ 33; Pl. Dep. at 109:18–21. As Defendant was suctioning the fat, Plaintiff grew unable to stay awake and was not fully conscious. Pl. Opp'n ¶ 33; Pl. Dep. at 109:7–10. She suspected that photographs were being taken of her. Pl. Opp'n ¶ 33; Pl. Dep. at 115:13–18. She felt pain in her right hip. Pl. Opp'n ¶ 36; Pl. Dep. at 111:13–112:2.

After the procedure, Plaintiff paid Defendant the remaining $6,000 balance for his services. Pl. Dep. at 86:8–16; Moore Med. Records at 28. Plaintiff states that in addition to the documented $11,000 payment made for the liposuction, she paid $2,000 in cash for the facial "scar treatment." Pl. Dep. at 86:8–16; Moore Med. Records at 28.

Plaintiff then returned to her hotel. The next day, she was unhappy with the results of the procedure, and called Defendant's representative to express her dissatisfaction and to inquire whether the bleeding she was experiencing was normal. Pl. Opp'n ¶¶ 39–40; Pl. Dep. at 123:5–124:20. Defendant's records reflect that the representative called Plaintiff and confirmed that she was "doing fine and happy." Moore Med. Records at 1. Later that day, Plaintiff went back to Defendant's office for a massage. 56.1 Stmt. ¶ 42. Plaintiff says that within a week after the procedure, she returned to Defendant's office twice more for massages; Defendant's records

3

do not reflect another visit until August 10, 2015.  56.1 Stmt. ¶ 43; Pl. Opp'n ¶ 41; Pl. Dep. at 127:8–18.

Plaintiff states that as instructed, she did not wear tight clothing for six months, and wore the required compression garments for "a long time."  Pl. Opp'n ¶ 43; Pl. Dep. at 152:15–22.  Nevertheless, she had extreme pain in her hip.  Pl. Opp'n ¶ 44; Pl. Dep. at 151:14–17.  Plaintiff also asserts that after the procedure, acquaintances began to act strangely around her, including people shunning her, which she attributes to individuals viewing photographs of her taken during the procedure.  Pl. Opp'n ¶ 46, at 34; Pl. Dep. at 153:3–15.

Six months later, Plaintiff went back to Defendant's office. Defendant's records indicate that Plaintiff was wearing tight clothing, which she had been warned could create complications.  Moore Med. Records at 25.  She was instructed to stop wearing tight clothes, and to return in two weeks.  *Id.*  Plaintiff states that at that the follow-up appointment she said she was feeling pain, and Defendant "tried to use a needle to poke around [her] leg an[d] retrieve some of the substance in [her] leg causing pain and pressure."  Pl. Opp'n ¶ 47; Pl. Dep. at 132:21–133:16.

On June 2, 2017, after her final visit to Defendant, Plaintiff's left hip was x-rayed at Cambridge Health, a Boston medical center, in connection with her complaint of chronic hip pain.  56.1 Stmt. ¶ 44; Pl. Dep. at 137:2–11; ECF No. 37 at 55.  The x-ray revealed nothing "wrong with [her] bone structure."  56.1 Stmt. ¶ 44; Pl. Dep. at 137:18–25.

Plaintiff filed her complaint in this action on January 17, 2018, a first amended complaint on February 8, 2018, and a second amended complaint on May 10, 2018, alleging injuries to her face and joints, reputation, and occupation, and emotional distress.  ECF Nos. 2, 8, 20.  On February 27, 2019, this Court adopted the Honorable Kevin N. Fox's report and recommendation granting Defendant's motion to dismiss the complaint due to the statute of limitations to the

4

extent that it alleged time-barred intentional torts, but denying the motion with respect to negligence claims sounding in "medical malpractice or informed consent." *Moore v. Shahine*, No. 18 Civ. 463, 2019 WL 948349, at *3 (S.D.N.Y. Feb. 27, 2019).

Defendant now moves for summary judgment. ECF No. 86.

## DISCUSSION

Remaining in this action are Plaintiff's medical malpractice and informed consent claims. In addition, it appears that Plaintiff may be making an invasion of privacy claim. ECF No. 46 at 4–5. Though neither Judge Fox nor this Court specifically addressed the privacy claim at the motion to dismiss stage, the Court considers it here. For the reasons stated below, Defendant's motion is GRANTED.

I.  Legal Standard

Summary judgment is appropriate when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–26 (1986). A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

"The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination, the court must view all facts in the light most favorable to the non-moving party." *Connecticut Ironworkers Employers Ass'n, Inc. v. New England Reg'l Council of Carpenters*, 869 F.3d 92, 98–99 (2d Cir. 2017); see also Fed. R. Civ. P. 56(c)(1). If the nonmoving party has the ultimate burden of proof on specific issues at trial, the movant may also satisfy its own summary-judgment burden by demonstrating that the adverse party cannot produce admissible evidence to support an issue of fact. *Celotex*, 477 U.S.

at 322–23; *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).  If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine dispute of material fact. *Beard v. Banks*, 548 U.S. 521, 529 (2006); *PepsiCo*, 315 F.3d at 105.  Where the party opposing summary judgment "fails to properly address [the moving] party's assertion of fact . . ., the court may . . . consider the fact undisputed for purposes of the motion."  Fed. R. Civ. P. 56(e)(2).

    II.    <u>Local Civil Rule 56.1</u>

Local Civil Rule 56.1 governs factual statements on motions for summary judgment.  It requires a party moving for summary judgment to submit "a separate, short and concise statement" setting forth material facts as to which there is no genuine issue to be tried.  Local Civ. R. 56.1(a).  A party opposing summary judgment must respond with a statement of facts as to which a triable issue remains.  Local Rule 56.1(b).  "Each numbered paragraph in the statement of material facts . . . will be deemed to be admitted . . . unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."  Local Civ. R. 56.1(c).  Further, "[e]ach statement by the movant or opponent . . . including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  Local Civ. R. 56.1(d).  Finally, if the moving party seeks summary judgment against a *pro se* litigant, that party must provide the *pro se* litigant with notice of the requirements of both Rule 56 of the Federal Rules of Civil Procedure and Local Civil Rule 56.1.  Local Civ. R. 56.2.  Once provided with this notice, *pro se* litigants are not excused from satisfying their obligations under Local Civil Rule 56.1.  *Allen v. City of New York*, 480 F. Supp. 2d 689, 703 (S.D.N.Y. 2007).

Plaintiff was notified of her summary judgment obligations when Defendant provided her

6

with copies of both Rule 56 of the Federal Rules of Civil Procedure and Local Civil Rule 56.1. *See* Aff. of Service of Notice to Pro Se Litigant Opposing Summ. J., ECF No. 77.  But Plaintiff did not file a separate Rule 56.1 Statement.  Facts in a defendant's uncontroverted statement may be deemed admitted as a matter of law.  *See Gubitosi v. Kapica,* 154 F.3d 30, 31 n.1 (2d Cir. 1998).  However, district courts have broad discretion to overlook a party's failure to comply with local court rules and may "opt to conduct an assiduous review of the record even where one of the parties has failed to file [a Rule 56.1] statement."  *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) (citations and internal quotation marks omitted).  Courts in this Circuit typically forgive a *pro se* plaintiff's failure to file a Local Rule 56.1 statement, and generally conduct their own independent review of the record.  *See, e.g., Hayes v. County of Sullivan*, 853 F. Supp. 2d 400, 406 n.1 (S.D.N.Y. 2012).  The Court, therefore, construes Plaintiff's opposing affidavit as her statement of facts required by Local Civil Rule 56.1.  *See Smith v. Planas*, 975 F. Supp. 303, 305 n.2 (S.D.N.Y. 1997).  However, Plaintiff's affidavit fails to dispute many of the factual assertions in Defendant's 56.1 statement.  Thus, the Court considers any uncontroverted portions of Defendant's 56.1 statement admitted.  *See id*.

### III. Malpractice

In order to prove a medical malpractice claim in New York, Plaintiff must establish "(1) that the defendant breached the standard of care in the community, and (2) that the breach proximately caused the plaintiff's injuries." *Vale v. United States*, 673 F. App'x 114, 116 (2d Cir. 2016).  "A medical malpractice defendant is *prima facie* entitled to summary judgment if it demonstrates that it did not depart from good and accepted medical practice or that any departure did not proximately cause plaintiff's injuries." *Ongley v. St. Lukes Roosevelt Hosp. Ctr.*, 725 F. App'x 44, 46 (2d Cir. 2018) (internal quotation marks and citation omitted).  To counter that

7

prima facie case, a malpractice plaintiff must present expert testimony in support of their allegations. *Id.* at 46–47 (citing *Sitts v. United States*, 811 F.2d 736, 739 (2d Cir. 1987)). This expert testimony must support each element of the malpractice claim. *Vale*, 673 F. App'x at 116.

Without specifying how Defendant's services fell below accepted medical standards, Plaintiff claims that Defendant did a "botched job" on the liposuction and fat transfer procedure, as evidenced by the pain she experienced before and after the surgery. Pl. Opp'n ¶¶ 33–37, 39, at 34, 37. Plaintiff also faults Defendant's post-procedure services, claiming that Defendant failed to address Plaintiff's dissatisfaction with the results both on the day of the surgery and at the six-month visit, and her continuing hip pain. Pl. Opp'n ¶¶ 39–40, 42, 44, 47.

Defendant has submitted the expert affidavit of Theodore Diktaban, M.D., a board-certified plastic surgeon. Diktaban Aff. ¶ 1, ECF No. 87-12. Diktaban opines that, to "a reasonable degree of medical certainty, [] the care and treatment provided to [Plaintiff] by [Defendant] were at all times within good and acceptable medical practice," and that "[P]laintiff's injuries were not caused or contributed to in any way by the care rendered by [Defendant]." *Id.* ¶¶ 4–5. Specifically, he notes that Plaintiff "did not present with typical symptoms of an improperly performed liposuction or fat transfer" in subsequent visits to other medical facilities. *Id.* ¶ 45. He further suggests that Plaintiff's pain could be a result of injuries she suffered after the procedure with Defendant. *Id.* ¶ 46. Diktaban based this opinion on his review of the pleadings, depositions, and Plaintiff's medical records, provided both by Defendant and other medical professionals. *Id.* ¶ 3.

Plaintiff does not offer expert testimony to contest Diktaban's opinions. Though Plaintiff is appearing *pro se*, "this does not excuse her failure to procure expert medical testimony to support her claim." *Ross v. United States*, No. 15 Civ. 1094, 2018 WL 1870470, at *4

(N.D.N.Y. Apr. 17, 2018) (citing *Farland v. United States*, 622 F. App'x 12, 13 (2d Cir. 2015)); *Lesane v. United States*, No. 16 Civ. 3049, 2018 WL 3329854, at *5 (S.D.N.Y. July 6, 2018). Judge Fox warned Plaintiff in May 2019 that "inasmuch as this is an action in which the plaintiff alleges medical malpractice, . . . the need to obtain medical experts and to elicit testimony from them will be critical." *Moore v. Shahine*, No. 18 Civ. 463, 2019 WL 2327696, at *2 (S.D.N.Y. May 31, 2019). Despite this warning, Plaintiff has failed to provide expert testimony.

Plaintiff does, however, contest the evidence on which Diktaban bases his opinion. Diktaban relies on Defendant's medical records. *See, e.g.*, Diktaban Aff. ¶¶ 20–23. Plaintiff challenges that reliance, claiming that Defendant falsified certain of those records: (1) the document recording Plaintiff's call with his office the day after the procedure, which states that Plaintiff said she was "doing fine and happy," Moore Med. Records at 1, and (2) the record of Plaintiff's six-month follow-up appointment, which does not indicate any complaints, Moore Med. Records at 25. Pl. Opp'n ¶¶ 40, 45.

This contention is not implausible. Since this lawsuit was filed, the New York Department of Health has revoked Defendant's medical license for falsifying medical records, among other charges. *In the Matter of Ayman Shahine, M.D.*, N.Y. Dep't of Health, State Bd. for Prof. Med. Conduct, No. 19-002, at 28–29 (Jan. 2, 2019).[3] Plaintiff, however, has failed to provide the required expert testimony to establish causation: even assuming that Plaintiff had represented that she was displeased with the results and in pain, she has not shown that Defendant's failure to act on her complaints caused her injuries. *See Ongley*, 725 Fed. App'x at 47 (affirming the district court's grant of summary judgment where plaintiff's expert only

---

[3] The Court takes judicial notice of the New York Department of Health's decision as a public filing, not for the truth of the facts within but to establish the existence of the decision. *Jarvois v. Ferrara*, No. 18 Civ. 3997, 2020 WL 6585701, at *2 n.2 (S.D.N.Y. Nov. 9, 2020).

9

offered "speculative" theories of causation).

Accordingly, Defendant's motion for summary judgment on Plaintiff's medical malpractice causes of action based on "botched" surgery and failures in follow-up care is GRANTED.

IV.     Informed Consent

To show malpractice based on a lack of informed consent under New York law, a plaintiff must demonstrate that "(1) the practitioner failed to disclose the risks, benefits and alternatives to the procedure or treatment that a reasonable practitioner would have disclosed and (2) a reasonable person in the plaintiff's position, fully informed, would have elected not to undergo the procedure or treatment." *I.M. v. United States*, 362 F. Supp. 3d 161, 203 (S.D.N.Y. 2019).  A practitioner must conduct this disclosure "as a reasonable medical . . . practitioner under similar circumstances would have disclosed, in a manner permitting the patient to make a knowledgeable evaluation." N.Y. Pub. Health Law § 2805–D(1).  The plaintiff must also prove that "lack of informed consent is a proximate cause of the injury or condition for which recovery is sought." *Id.* § 2805–D(3).  As with other types of malpractice, expert testimony is required to prove these elements.  *Smith v. Masterson*, 353 F. App'x 505, 508 (2d Cir. 2009).

Plaintiff alleges a lack of informed consent due to (1) her being rushed through the signing of the informed consent documents, Pl. Opp'n at 35, and (2) Defendant's exceeding the scope of the discussed procedure by giving her anesthesia causing her to lose full consciousness, inserting fat into her breasts, and performing a procedure on her face with "hard tools," all against her explicit instructions. Pl. Opp'n ¶ 37, at 34, 37; Pl. Dep. at 87:22–25.

Plaintiff signed documents consenting to the procedure.  56.1 Stmt. ¶¶ 18–26.  Plaintiff's signature, however, "does not establish [Defendant's] entitlement to judgment as a matter of

10

law." *Walker v. Saint Vincent Catholic Med. Ctrs*, 114 A.D.3d 669, 670–71 (N.Y. App. Div. 2014) (internal citations omitted).

Plaintiff states that on the first visit, Defendant explained possible side effects to her, including that she would be "numb like at the dentist and [she] would be awake an[d] happy." Pl. Opp'n ¶ 18; Pl. Dep. at 72:6–10. On her second visit, upon arriving at Defendant's office, she was given a set of documents, including consent forms. Pl. Dep. at 93:9–15. Defendant then "forceful[ly]" told her to "just sign it." *Id.* at 93:20–94:4. Defendant "attempted to just summarize some of the paperwork," indicating that it "confirm[ed] that you're who you are, I am who I am, we are where we are at doing the procedure." *Id.* at 94:5–9. Plaintiff states that she "didn't have an opportunity to read" the forms and "was just told to sign the lines." *Id.* at 100:6–7, 103:19–21. She further represents that she was not aware of certain risks of the procedure, nor had she authorized the use of her photographs. *Id.* at 100:14–101:4. The whole process was done "in such a rush." *Id.* at 94:2; Pl. Opp'n ¶ 27 ("I was warned if I took time to read over my window for surgery would lost an[d] they would reschedule").

According to Diktaban, Defendant's procedure for obtaining Plaintiff's informed consent was "in accordance with good and accepted medical practice," as Defendant "appropriately had plaintiff initial and execute various consent forms." Diktaban Aff. ¶ 37. Diktaban further states that this process "advised [Plaintiff] of the risks of these procedures while simultaneously giving her ample opportunity to reconsider the surgery." *Id.* Because Plaintiff "signed each document and consented to the surgery . . . there is no question that [Defendant] obtained [Plaintiff's] informed consent." *Id.*

Plaintiff has not put forth any expert testimony to dispute Diktaban's analysis and conclusions. Nor has she stated that if she had been fully informed, she would not have chosen

11

to go forward with the surgery.  Without such evidence to contradict Diktaban's expert opinion, the Court cannot conclude she has created a triable issue of material fact on this issue.  *See I.M.*, 362 F. Supp. 3d at 204.

Plaintiff also contends there was a lack of informed consent because Defendant performed procedures which she had not authorized.  *See Moore*, 2019 WL 948349, at *3.  Plaintiff states that despite her express instructions that she remain fully conscious during the procedure, and Defendant's assurances that she would, she was given anesthesia that caused her to go "in and out" during the procedure such that she "couldn't come to."  Pl. Dep. at 108:7, 109:10; Pl. Opp'n at 34 ("I felt I stressed enough the importance of being awake.  The drug cocktail given made this impossible.").  She further asserts that despite her instructions to use only laser tools in the course of scar treatment to her face, Defendant used a power tool.  Pl. Opp'n ¶ 37; Pl. Dep. at 87:9–15, 113:4–9 .  Finally, she says that Defendant injected fat into her breasts and behind her neck, contrary to her express instructions.  Pl. Dep. at 116:10–13; Pl. Opp'n ¶¶ 35, 42.

Diktaban opines that Defendant's use of anesthesia was "standard and appropriate" for the procedure.  Diktaban Aff. ¶ 38.  He further states that Defendant did not treat Plaintiff's breasts, neck, or face, because such treatment is not documented in Defendant's records.  *Id.* ¶ 34.  Diktaban notes that there is no mention in Plaintiff's medical records from subsequent, unrelated medical examinations of additional facial scarring.  *Id.* ¶ 45.

Plaintiff has submitted no expert testimony challenging Diktaban's conclusions.  The only evidence she presents that Defendant conducted procedures on her in addition to those indicated in his records is her memory of the events: that she felt a sensation on the side of her arm and breast, which she took to be the insertion of fat to her breast.  Pl. Dep. at 113:13–18,

12

116:14–23.  These statements, with no evidence, expert or otherwise, to support her impressions, are not sufficient to counter Diktaban's expert opinion.

Accordingly, Defendant's motion for summary judgment on Plaintiff's claim for malpractice based on a lack of informed consent is GRANTED.

V.     Privacy

Plaintiff appears to assert a violation of privacy claim based on Defendant's sharing of her personal information and photographs.  ECF No. 8 at 5–6; Pl. Dep. at 115:15–19, 153:11–12.  New York "does not recognize a common-law right of privacy and provides a statutory remedy only for the commercial use of a living person's name, portrait, picture, or voice without their consent."  *Barbash v. STX Fin., LLC*, No. 20 Civ. 123, 2020 WL 6586155, at *2 (S.D.N.Y. Nov. 10, 2020).  Plaintiff has not offered any evidence, other than conclusory or speculative statements, that Defendant disseminated her photograph for any use, commercial or otherwise.

Plaintiff may also be alleging a violation of the provisions of the Health Insurance Portability and Accountability Act ("HIPAA") insuring confidentiality of her medical records.  42 U.S.C. §§ 1320d–1 to d–7.  HIPAA, however, "confers no private cause of action, express or implied."  *Meadows v. United Servs., Inc.*, 963 F.3d 240, 244 (2d Cir. 2020).  An individual such as Plaintiff, therefore, cannot sue for its violation.

Accordingly, to the extent that Plaintiff alleges a violation of privacy, Defendant's motion for summary judgment on that claim is GRANTED.

## CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment is GRANTED.

13

The Clerk of Court is directed to mail a copy of this order to the Plaintiff *pro se*, to terminate the motion at ECF No. 86, and to close the case.

SO ORDERED.

Dated: March 4, 2021
      New York, New York

_____
ANALISA TORRES
United States District Judge